PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVA GONZALES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>E.L.F. COSMETICS, INC,<br><br>Defendant. | Case No. 2:25-cv-1580<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br>2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br>3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.* |

## **INTRODUCTION**

1.      Defendant E.L.F. Cosmetics, Inc. ("Defendant") manufactures and sells popular beauty products throughout the United States. To increase profits at the expense of consumers and fair competition, Defendant deceptively sells Defendant's 3.04-fluid ounce size Holy Hydration! Gentle Peeling Exfoliant product and 0.1-fluid ounce Glossy Lip Stain product (collectively, the "Products") in oversized containers that do not reasonably inform consumers that they are up to half empty. Defendant dupes unsuspecting consumers across America to pay premium prices for empty space. Below is a true and correct image of Defendant's Products in opaque containers evidencing the deception. The first two photographs show the Products as they appear to the purchaser, and the last two photographs show that the Products' packaging is approximately 50% empty.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







CLASS ACTION COMPLAINT

2.      Defendant markets the Products in a systematically misleading manner by representing them as adequately filled when, in fact, they contain an unlawful amount of empty space or "slack-fill." Defendant underfills the Products for no lawful reason. The front of the Products' packaging does not include any information that would reasonably apprise Plaintiff of the quantity of products relative to the size of the containers, such as a fill line or indication that the inner lining of the container restricts the amount of product from filling what appears from the outside to be full containers.

3.      Defendant underfills the Products to save money and to deceive consumers into purchasing the Products over its competitors' products. Defendant's slack-fill scheme not only harms consumers, but it also harms its competitors who implemented labeling changes designed to alert consumers to the true amount of product in each container.

4.      Accordingly, Defendant has violated the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, particularly California Civil Code sections 1770(a)(2), 1770(a)(5), and 1770(a)(9). As such, Defendant has committed per se violations of the Unfair Competition Law ("UCL"), Business & Professions Code section 17200, *et seq.* and the False Advertising Law ("FAL"), Business & Professions Code section 17500, *et seq.*

5.      Plaintiff Geneva Gonzales ("Plaintiff") and other California consumers who have purchased the Products have thus suffered injuries in fact caused by the false, unfair, deceptive, unlawful, and misleading practices set forth herein.

6.      Several California courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See, e.g.*, *Winkelbauer v. Orgain Mgmt. et. al*, No. 20STCV44583 (Cal. Super. Ct. L.A. Cty. May 20, 2021) (defendant's demurrer to claims involving slack-filled protein powder products overruled); *Merry, et al. v. International Coffee & Tea, LLC dba The Coffee Bean*, Case No. CIVDS1920749 (Cal. Super. Ct. San Bernardino Cty. Jan. 27, 2020) (defendant's demurrer to slack-filled powder container claims overruled); *Tsuchiyama v. Taste of*

*Nature, Inc.*, No. BC651252 (Cal. Super. Ct. L.A. Cty. Feb. 28, 2018) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently certified through Missouri court); *Thomas v. Nestle USA, Inc.*, No. BC649863 (Cal. Super. Ct. L.A. Cty. Apr. 29, 2020) (certifying as a class action, over opposition, slack-fill claims brought under California consumer protection laws).

## **PARTIES**

7.     Plaintiff is, and at all times relevant hereto was, a citizen of California.

8.     Defendant is a Delaware corporation with its principal place of business located in Oakland, California.  Defendant, directly and through its agents, conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Products.

9.     In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, and deceptive representations to induce members of the public to purchase the Products. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

10.     Defendant, upon becoming involved with the manufacture, advertising, and sale of the Products, knew or should have known that its advertising of the Products' packaging, specifically by representing that they were full, was false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of beauty product contained in the Products' packaging in order to convince the public and consumers to purchase the Products, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

11.     Defendant has created and still perpetuates a falsehood that the Products' packaging contains an amount of product commensurate with the size of the packages,

though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Products are false, misleading, and/or likely to deceive in violation of California packaging and advertising laws.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

13.    Plaintiff requests an injunction which would require Defendant to change its marketing and packaging of its Products sold nationally.  If such an injunction is granted, Plaintiff is informed and believes and thereon alleges that Defendant would have to discard its existing inventory of the current Products' containers, pay to have its containers redesigned, and repurchase thousands of the redesigned containers.  The cost of discarding the existing inventory of containers alone will likely exceed $75,000, an amount that is exponentially higher when accounting for the new containers that Defendant would have to purchase.  Thus, the cost of compliance with the requested injunctive relief alone would meet the amount in controversy requirement.

14.    Plaintiff seeks an award of attorneys' fees under California's CLRA.  Cal. Civ. Code § 1780(e); *see Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, ***either with mandatory or discretionary language***, such fees may be included in the amount in controversy.") (emphasis added).

15.    Punitive damages are also sought herein based upon Defendant's deceptive conduct, which indicates that Defendant is guilty of oppression, fraud, or malice.

16.    This Court also has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

17.     In *Mateski v. Just Born, Inc.*, No. CIVDS1926742 (Cal. Super. Ct. San Bernardino Cty.), the California Superior Court issued an order granting final approval of a class action settlement in an action alleging non-functional slack-fill in food packaging in which the total monetary settlement was for a non-reversionary $3.3 million total amount including $983,161.07 in attorneys' fees and $216,838.93 in litigation expenses. *See Mateski v. Just Born, Inc.*, No. CIVDS1926742, slip op. at 6:2-4 (Cal. Super. Ct. San Bernardino Cty. Dec. 15, 2020) (Cohn, J.); *Mateski v. Just Born, Inc.*, No. CIVDS1926742, 2020 WL 12602319 (Cal. Super. Ct. San Bernardino Cty. May 5, 2020) (Class Action Settlement Agt. 1.47).

18.     In *Iglesias v. Ferrara Candy Co.*, No. 3:17-cv-00849-VC (N.D. Cal.), the federal district court issued an order granting a motion for final approval of a class action settlement in an action alleging non-functional slack-fill in food packaging in which a $2.5 million common fund was approved by the Court.  (Doc. 93 at 8:1-2 in No. 3:17-cv-00849-VC (N.D. Cal. Nov. 8, 2018) (Chhabria, J.); (Doc. 94 at 1:7-9 in No. 3:17-cv-00849-VC (N.D. Cal. Nov. 8, 2018) (Chhabria, J.).)  That court also granted the plaintiff's motion for attorneys' fees in the sum of $625,000 and $102,172.12 in litigation expenses. (Doc. 94 at 1:9-11, 1:18-21 in No. 3:17-cv-00849-VC (N.D. Cal. Nov. 8, 2018) (Chhabria, J.)).

19.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District.

20.     Defendant is subject to jurisdiction under California's "long-arm" statute because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."

## FACTUAL BACKGROUND

21.     The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13

seconds deciding whether to make an in-store purchase;[1]; this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[2] While the amount of product inside any product packaging is material to any reasonable consumer seeking to purchase that product, over 60% of consumers report that they felt "duped" or "misled" by certain types of packaging of items that they have purchased.[3]

22.     Accordingly, Defendant chose a certain size container for its Products to convey to consumers that they are receiving a certain and substantial amount of lip gloss and exfoliant products commensurate with the size of the containers. Instead, consumers are receiving a substantial amount of nonfunctional slack-fill.

23.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

24.     Defendant falsely represents the quantity of product in each of the Products' opaque containers through its packaging. The size of each box/container of lip gloss leads the reasonable consumer to believe he or she is purchasing a tube full of lip gloss that extends for the full length of the exterior packaging when in reality what they are actually receiving is significantly less than what is represented by the size of the containers. The lip gloss tube, which is approximately 2-7/16 inches in length (but only 1-7/8 inch of the tube is visible to consumers via an opening in the exterior packaging), fits within the shape of the outer packaging, which is 4-1/8 inches in length, such that a reasonable consumer cannot reasonably discern prior to purchase that the lip gloss tube does not

---

[1] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/ (last visited Feb. 18, 2025).

[2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

[3] https://www.shorr.com/resources/blog/2020-food-packaging-consumer-behavior-report/#:~:text=In%20fact%2C%2066%25%20of%20respondents,and%20food%20packaging%20moving%20forward (last visited Feb. 18, 2025).

extend for the full length of the exterior packaging container. That is, a reasonable consumer is led to believe that the lip gloss tube is approximately 1.6875 inches longer than it actually is. The size of each container of exfoliant leads the reasonable consumer to believe he or she is purchasing a container full of exfoliant when in reality what they are actually receiving is significantly less than what is represented by the size of the containers.

25. Even if Plaintiff and other reasonable consumers of the Products had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight, they did not and would not have reasonably understood or expected such representations to translate to a quantity of semi-liquid product meaningfully different from their expectation of an amount of product commensurate with the size of the container.

26. Prior to the point of sale, the Products' packaging does not allow for an accurate visual or audial confirmation of the quantity in the Products. The Products' opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Products before opening the containers, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the Products.

27. The other information that Defendant provides about the quantity of lip gloss and exfoliant on the label of the Products does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Products as compared to the sizes of the containers themselves. For instance, *nothing* on the outside of the Products and its labels would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as an opaque area showing the size of the lip gloss tube in relation to the side of the packaging or clear plastic on the exfoliant.




28.    Disclosures of net weight in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of item contained in the Products' containers that would be different from their expectation that the quantity of lip gloss or exfoliant is commensurate with the size of the container.

29.    Because the packages are filled to about half of their capacity, Defendant can increase the Products' fill levels significantly without affecting how the containers are sealed, or it can disclose the fill-levels on the outside labeling to inform consumers of the amount of product actually in the containers, consistent with the law.

30.    Defendant may contend that the lip gloss Product's outer packaging is necessary to contain all the product information in a readable size; however, if that is the case, the lip gloss tube could be the same size as the outer packaging, rather than approximately half its size.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

31.    Additionally, besides the lip gloss being approximately half the size of the packaging, almost half the tube is applicator, further reducing the amount of lip gloss the consumer receives when purchasing Glossy Lip Stain.



32.    Defendant may also allege that the tube of Holy Hydration! contains slack-fill so consumer can squeeze the product more easily, but other comparable products are much fuller and still dispense properly.  As depicted in the image below, Plaintiff's finger is pointing at the level of exfoliant in relation to the outside of the tube in the below photograph.  Defendant simply wants a guise for its nonfunctional slack-fill.



33.    Defendant can easily increase the quantity of product in each container (or, alternatively, decrease the size of the containers) significantly.

34.    Plaintiff purchased Defendant's 3.04-ounce size Holy Hydration! Gentle Peeling Exfoliant and 0.1-ounce Glossy Lip Stain for personal use in January 2025 from a Target store in Norwalk, California.

35.    Plaintiff paid $10 for the exfoliant and $6 for the lip gloss, which are premium prices for the Products.

36.    Plaintiff had dual motivations for purchasing the product.  First, Plaintiff is a consumer rights "tester" who creates public benefit by ensuring that companies comply with their obligations under California law.  Second, Plaintiff was genuinely interested in consuming and enjoying the Products, and did so – with disappointment that the containers had significant amounts of empty space.

37.    Plaintiff's status as a dual motivation tester is both necessary and appropriate.  First, it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes. *See Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023).  Second, nearly all consumers have dual motives, as there are usually multiple reasons behind their purchasing decisions. *See Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.).

38.    In making her purchases, Plaintiff relied upon the opaque packaging, including the size of the box, container, and product label, which were prepared and approved by Defendant and its agents, and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products.

39.    Plaintiff understood the size of the containers and product labels to indicate that the amount of lip gloss and exfoliant contained therein was commensurate with the size of the containers, and she would not have purchased the Products, or would not have paid a price premium for the Products, had she known that the size of the containers and product labels were false and misleading.

40.    Plaintiff would not have purchased the Products had she known that the Products contained slack-fill that serves no functional or lawful purpose.

41.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because Plaintiff has no adequate remedy at law.

42.    A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's claim under the CLRA is subject to the reasonable consumer test.  Plaintiff may be able to prove Plaintiff's claim for violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, while not being able to prove one or more elements of Plaintiff's legal claim under the CLRA seeking damages.

43.    In addition, to obtain a full refund as damages, Plaintiff must show that the Product that Plaintiff bought has essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased a Product that Plaintiff would not otherwise have purchased, but for Defendant's representations.  Obtaining a full refund at law is less certain than obtaining a refund in equity.

44.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces.  Only an injunction can remedy this threat of future harm.

45.    If the Products' packaging and labels were not misleading, then Plaintiff would purchase the Products in the future.  Plaintiff intends to purchase the Products in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Products are accurate and lawful, at which point she will reasonably be able to rely upon Defendant's representations about the Products.

**<u>None of the Slack-Fill Statutory Exceptions Apply to the Product</u>**

46.    Under California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code Section 109875 *et seq.*, "No container shall be wherein commodities are packed shall … be … constructed or filled, wholly or partially, as to facilitate the perpetration of deception or fraud." (Cal. Health & Safety Code § 110375(a).) "No container shall be … filled as to be misleading." *Id.* § 110375(b). "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." *Id.* "Slack fill is the difference between the actual capacity of a container and the volume of product contained therein." *Id.* "Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of [15 enumerated exceptions]." *Id.*

47.    None of the safe harbor exceptions for slack-fill at Business & Professions Code § 12606(b) apply to Defendant's Products.

**A.    Cal. Health & Safety Code § 110375(b)(1); Cal. Bus. & Prof. Code § 12606(b)(1) – Protection of the Contents**

48.    The slack-fill in the Products does not protect the contents of the packages. In fact, because the Products consist of creamy substances, there is no need to protect the Products with the slack-fill present.

**B.    Cal. Health & Safety Code § 110375(b)(2); Cal. Bus. & Prof. Code § 12606(b)(2) – Requirements of Machines**

49.    The machines used to package the Products would not be affected if there were more semi-liquid products added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

50.    Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of product actually in the package, consistent with the law.

**C.    Cal. Health & Safety Code § 110375(b)(3); Cal. Bus. & Prof. Code § 12606(b)(3) – Unavoidable Product Settling During Shipping and Handling**

51.    The slack-fill present in the Products is not a result of the products settling during shipping and handling. Given the Products' density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.  Even if *some* product settling may occur, there is no reason why the Products' containers are approximately 50% empty.

**D.    Cal. Health & Safety Code § 110375(b)(4); Cal. Bus. & Prof. Code § 12606(b)(4) – Labeling Information**

52.    There is no need to use a larger than required container to provide adequate space for the legible presentation of mandatory and necessary labeling information.

**E.    Cal. Health & Safety Code § 110375(b)(5); Cal. Bus. & Prof. Code § 12606(b)(5) – Decorative or Representational Container**

53.    The Products' containers are not a necessary part of the presentation of the Products.  They do not constitute a significant in proportion of the value of the Products, nor have an independent function to hold the Products, such as a gift combined with a container that is intended for further use after the products are consumed, or durable commemorative or promotional packages.  The Products' containers may be discarded immediately after the beauty products are consumed.

**F.    Cal. Health & Safety Code § 110375(b)(6); Cal. Bus. & Prof. Code § 12606(b)(6) – Inability to Increase Level of Fill or Further Reduce Package Size**

54.    Defendant can easily increase the quantity of the Product in each package (or, alternatively, decrease the size of the packages) significantly.

55.    The size of the container is not at some minimum package size necessary to accommodate required labeling, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

**G.      Cal. Health & Safety Code § 110375(b)(7); Cal. Bus. & Prof. Code § 12606(b)(7) – Reasonable Relationship to Actual Amount of Product Contained Inside; Visibility of Amount of Product to Consumer**

56.     The Products' containers do not bear a reasonable relationship to the actual amount of Products contained inside, and the dimensions of the actual Products' containers, the Products, and/or the amount of Product therein are not visible to the consumer at the point of sale, nor are the dimensions of the secondary packaging, *i.e.*, the small tube of the lip gloss, visible to the consumer at the point of sale.

**H.      Cal. Health & Safety Code § 110375(b)(8)(A); Cal. Bus. & Prof. Code § 12606(b)(8)(A) – Visibility of the Dimensions of the Product Through the Exterior Packaging**

57.     The dimensions of the Products or the immediate product container are not visible through the exterior packaging, which is opaque.  The dimensions of the lip gloss Product are obscured by the packaging material at both the top and at the bottom of the immediate product container for the lip gloss.

**I.      Cal. Health & Safety Code § 110375(b)(8)(B); Cal. Bus. & Prof. Code § 12606(b)(8)(B) – "Actual Size" Depiction**

58.     For both of the Products at issue herein, the immediate Product containers do not contain any clear and conspicuous depiction of the actual size of the Products on any side of the exterior packaging, excluding the bottom.  The Products' containers do not contain a clear and conspicuous disclosure that any depiction of the actual size of the Products is the "actual size" of the Products.

**J.      Cal. Health & Safety Code § 110375(b)(8)(C); Cal. Bus. & Prof. Code § 12606(b)(8)(C) – "Fill Line"**

59.     For both of the Products at issue herein, the immediate Product container does not clearly and conspicuously depict any line or a graphic that represents the Product or Product fill and a statement communicating that the line or graphic represents the Product or Product fill such as "Fill Line."

**K.    Cal. Health & Safety Code § 110375(b)(9); Cal. Bus. & Prof. Code § 12606(b)(9) – Headspace**

60.    For both of the Products at issue herein, the immediate Product container does not have any headspace necessary to facilitate the mixing, adding, shaking, or dispensing of liquids or powders by consumers before use.  The Product container contains no instructions stating that headspace is necessary to facilitate the mixing, adding, shaking, or dispensing of liquids or powders by consumers before use.

**L.    Cal. Health & Safety Code § 110375(b)(10); Cal. Bus. & Prof. Code § 12606(b)(10) – Product Delivery Device**

61.    The exterior packaging does not contain a product delivery or dosing device.

**M.    Cal. Health & Safety Code § 110375(b)(11); Cal. Bus. & Prof. Code § 12606(b)(11) – Kit**

62.    For both of the Products at issue herein, the immediate Product container is not a kit that consists of a system, or multiple components, designed to produce a particular result that is not dependent upon the quantity of the contents.  There is no clear and conspicuous disclosure of any kit on the exterior packaging of the Product.

**N.    Cal. Health & Safety Code § 110375(b)(12); Cal. Bus. & Prof. Code § 12606(b)(12) – Display Via Tester Units or Demonstrations in Retail Stores.**

63.    For both of the Products at issue herein, the exterior package of the Product is not routinely displayed using tester units or demonstrations to consumers in retail stores, so that customers can see the actual, immediate container of the Product being sold, or a depiction of the actual size of the container before purchase.

64.    Below are photographs of the Product's display at typical retail stores:



**O.    Cal. Health & Safety Code § 110375(b)(13); Cal. Bus. & Prof. Code § 12606(b)(13) – Holiday Boxes or Gift Packages**

65.    The Products are not offered for sale at retail stores in exterior packaging consisting of single or multiunit presentation boxes of holiday or gift packages.

**P.    Cal. Health & Safety Code § 110375(b)(14); Cal. Bus. & Prof. Code § 12606(b)(14) – Free Sample or Gift**

66.    The Products are not offered for sale at retail stores in exterior packaging consisting of a combination of one purchased product, together with a free sample or gift, wherein the exterior packaging is necessarily larger than it would otherwise be due to the inclusion of the sample or gift.

**Q.    Cal. Health & Safety Code § 110375(b)(15); Cal. Bus. & Prof. Code § 12606(b)(16) – Mode of Commerce**

67.    The mode of commerce allows the consumer to view or handle the physical container of the Products.

**Q.    Cal. Bus. & Prof. Code § 12606(b)(15) – Computer Hardware or Software**

68.    In comparison to the Sherman Law's exceptions set forth above, California's Fair Packaging and Labeling Act, Cal. Bus. & Prof. Code § 12606, contains an overlapping list of exclusions to nonfunctional slack-fill in the packaging of commodities

with one exception set forth in Cal. Bus. & Prof. Code § 12606(b)(15). The immediate Product container does not enclose computer hardware or software designed to serve a particular computer function.

69.    Because none of the safe harbor provisions in either the Sherman Law or the Fair Packaging and Labeling Act apply to the Product's container or packaging, the container contains nonfunctional slack-fill in violation of section 110375 of the California Health and Safety Code and section 12606 of the California Business and Professions Code, and are, therefore, misleading as a matter of law.

70.    Defendant's false, deceptive, and misleading filling of the Product containers is unlawful under state consumer protection and packaging laws.

71.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Products' non-functional slack-fill.

## CLASS ACTION ALLEGATIONS

72.    Plaintiff bring this action on her own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

**All Californians who purchased Defendant's Products containing non-functional slack fill in California during the four years preceding the filing of this action (the "Class").**

73.    Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products. Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

74.    The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

75.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.    Common questions of law and fact include, but are not limited to, the following:

a. The true nature and amount of product contained in each Products' packaging;

b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

c. Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business & Professions Code § 17200, *et seq.*;

d. Whether Defendant's conduct is an unfair business act or practice within the meaning of Business & Professions Code § 17200, *et seq.*;

e. Whether Defendant's advertising is untrue or misleading within the meaning of Business & Professions Code § 17500, *et seq.*;

f. Whether Defendant made false and misleading representations in its advertising and labeling of the Products;

g. Whether Defendant knew or should have known that the misrepresentations were false;

h. Whether Plaintiff and the Class paid more money for the Products than they actually received;

i. How much more money Plaintiff and the Class paid for the Products than they actually received; and

j. Whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members.

76.    Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained on packaging and labeling that was seen and relied on by Plaintiff and members of the Class.

77.    Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

78.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiff purchased the Products because of the size of the containers and the Products' labels, which she believed to be indicative of the amount of lip gloss and exfoliant contained therein as commensurate with the size of the containers. Plaintiff relied on Defendant's representations and would not have purchased the Products if she had known that the packaging, labeling, and advertising as described herein was false and misleading.

79.    The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions.

80.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

81.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

82.    Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *et seq.*

83.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

84.    Plaintiff brings this claim individually and on behalf of the Class.

85.    The Sherman Law declares any cosmetic to be misbranded if it is false or misleading in any particular or if the labeling and packaging do not conform with the requirements for labeling and packaging.  (Cal. Health & Safety Code §§ 109900, 111730, 111750.)

86.    The UCL prohibits "any unlawful [or] unfair... business act or practice." (Cal. Bus & Prof. Code § 17200.)

## A. "Unfair" Prong

87.    Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

88.    Defendant's actions alleged herein do not confer any benefit to consumers.

89.    Defendant's actions alleged herein cause injuries to consumers, who do not receive a quantity of product commensurate with their reasonable expectations.

90.     Defendant's actions alleged herein cause injuries to consumers, who end up overpaying for the Products and receive a quantity of lip gloss and exfoliant less than what they reasonably expected to receive.

91.     Consumers cannot avoid any of the injuries caused by Defendant's actions as alleged herein.

92.     Accordingly, the injuries caused by Defendant's conduct alleged herein outweigh any benefits.

93.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business & Professions Code § 17200, weighing the utility of the defendant's conduct against the gravity of the harm to the alleged victim.

94.     Here, Defendant's challenged conduct of has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

95.     The California Legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Business & Professions Code § 12606 and California Health & Safety Code, Division 104, Part 5, Chapter 7, Article 3.

96.     Defendant's packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

97.     Defendant knew or should have known of its unfair conduct.

98.     As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business & Professions Code § 17200.

99.     There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of beauty item contained within the Products.

100.  All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unfair conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

101.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for these products.  Specifically, Plaintiff paid for lip gloss and exfoliant she never received. Plaintiff would not have purchased the Products if she had known that the Products' packaging contained nonfunctional slack-fill.

### B. "Unlawful" Prong

102.  California Business & Professions Code § 17200, *et seq.*, identifies violations of other laws as unlawful practices that the UCL makes independently actionable.

103.  Defendant's packaging of the Products, as alleged in the preceding paragraphs, violates the Sherman Law, California Civil Code § 1750, *et seq.*, and California Business & Professions Code § 17500, *et seq.*

104.  Defendant's packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

105.  Defendant knew or should have known of its unlawful conduct.

106.  As alleged herein, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business & Professions Code § 17200.

107.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have either used packaging appropriate for the amount of lip gloss and exfoliant contained in the Products or indicated how much product the Products contained with a clear and conspicuous fill line or other disclosure, especially as related to the unnecessarily small lip gloss tube.

108. All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

109. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for this product. Specifically, Plaintiff paid for lip gloss and exfoliant products she never received. Plaintiff would not have purchased the Products if she had known that the packaging contained nonfunctional slack-fill.

110. As a result of the conduct described herein, Plaintiff and members of the Class are entitled to equitable relief including, but not limited to, restitution as no adequate remedy at law exists.

    a. The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Products between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

    b. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme of underfilling the Products' packaging. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and certain statutorily enumerated conduct).

111. Pursuant to California Civil Code § 3287(a), Plaintiff and the Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's

unfair and unlawful business conduct. The amount on which interest is to be calculated
is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to
interest in an amount according to proof.

### SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF
### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *et seq*.

112.   Plaintiff repeats and re-alleges the allegations set forth in the preceding
paragraphs and incorporate the same as if set forth herein at length.

113.   Plaintiff brings this claim individually and on behalf of the Class.

114.   California's FAL, California Business & Professions Code § 17500, *et seq.*,
makes it "unlawful for any person to make or disseminate or cause to be made or
disseminated before the public in this state, in any advertising device or in any other
manner or means whatever, including over the Internet, any statement, concerning
personal property or services, professional or otherwise, or performance or disposition
thereof, which is untrue or misleading and which is known, or which by the exercise of
reasonable care should beknown, to be untrue or misleading."

115.   Defendant knowingly manipulated the physical dimensions of the Products'
lip gloss insert, or stated another way, under-filled the amount of lip gloss and exfoliant
in the Products, as a means to mislead the public about the amount of contained in the
Products' packages.

116.   Defendant controls and controlled the packaging of the Products.  It knew
or should have known, through the exercise of reasonable care, that its representations
about the quantity of beauty product contained in the Products were untrue and
misleading.

117.   Defendant's action of packaging the Products with nonfunctional slack-fill,
instead of including more exfoliant in the container or decreasing the size of the
containers, or alternatively reshaping the lip gloss tube to fit the shape of the outer
packaging, is likely to deceive the general public.

118.    Defendant's actions were false and misleading, such that the general public is and was likely to be deceived, in violation of section 17500.

119.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.  The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Products for nonpersonal, non-family, and non-household purposes. Thus, Plaintiff and Class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA.

120.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Products in reliance upon the claims by Defendant that the Products were of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Products if she had known that the packaging and labeling as alleged herein were false.

121.    Plaintiff and members of the Class also request an order requiring Defendant disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interest and attorneys' fees.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *et seq*.

122.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

123.    Plaintiff brings this claim individually and on behalf of the Class.

124.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.  (Cal. Civ. Code § 1770(a).)

125.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result and did result in the sale of

the Products to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Products as compliant with the Sherman Law; (2) representing the Products have characteristics and quantities that they do not have; and (3) advertising and packaging the Products with intent not to sell it as advertised and packaged.

126.    Defendant packaged the Products in containers that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and the Class.

127.    Defendant deceived Plaintiff and the Class by misrepresenting the Products as having characteristics and quantities which it does not have, *e.g.*, that the Products are free of nonfunctional slack-fill when they are not. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

128.    Defendant deceived Plaintiff and the Class by packaging and advertising the Products with intent not to sell it as advertised and by intentionally underfilling the Products' containers and replacing product with nonfunctional slack-fill. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

129.    Defendant presented the physical dimensions of the Products' packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of product contained therein would be commensurate with the size of the packaging. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

130.   Defendant knew or should have known, through the exercise of reasonable care, that the Products' packaging was misleading.

131.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights.

132.   Defendant's packaging of the Products was a material factor in Plaintiff's and the Class's decision to purchase the Products. Based on Defendant's packaging of the Products, Plaintiff and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth, Plaintiff and the Class would not have purchased the Products.

133.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for beauty product she never received. Plaintiff would not have purchased the Products had she known the container contained nonfunctional slack-fill.

134.   On or about January 7, 2025, Plaintiff sent two letters notifying Defendant of the particular wrongdoing regarding each of the Products that violates the CLRA and demanded that Defendant appropriately correct, repair, replace, or provide another appropriate remedy of the violations.  The notice was in writing and sent by certified mail, return receipt requested to Defendant's principal place of business in California.

135.   More than 30 days have elapsed since Plaintiff sent such demand letters to Defendant, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so within a reasonable time.

136.   Plaintiff seeks injunctive relief, damages, and punitive damages under the CLRA.

137.   Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2). In addition, Defendant should be compelled to provide restitution

and damages to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations.

138.   Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.  Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively use nonfunctional slack-fill in the Products. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more lip gloss and exfoliant to the Products, reshaping the tube so as not to be misleading of the outer container, or adding a disclosure regarding the size of the tube on the outside label of the lip gloss Product. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (*i.e.*, purchasers who have been misled), while injunctive relief is necessary to remedy future harm (*i.e.*, prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (*e.g.,* the dollar amount that Plaintiff and Class members overpay for the underfilled Product), rendering injunctive relief a necessary remedy

139.   Defendant does business in the Central District of California by distributing its Product to retailers located in such District.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A.    An Order certifying the Class, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

B.   An order enjoining Defendant from continuing to package and/or label the Products as challenged herein;

C.   Damages against Defendant in an amount to be determined at trial, together with pre- and post- judgement interest at the maximum rate allowable by law on any amounts awarded;

D.   Restitution and/or disgorgement in an amount to be determined at trial;

E.   Punitive damages;

F.   Reasonable attorneys' fees and costs; and

G.   Granting such other and further as may be just and proper.

Dated:  February 25, 2025              PACIFIC TRIAL ATTORNEYS, APC


                                      By: _/s/ Scott J. Ferrell_____
                                      Scott. J. Ferrell
                                      Attorneys for Plaintiff